**Deborah Lyn PHILLIPS and Matilda Phillips, Plaintiffs,**

v.

**DALLAS CARRIER CORPORATION and Raymond Smith, Defendants.**

**No. C–90–87–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

April 9, 1991.

Jon Berkelhammer, Richmond G. Bernhardt, Jr., Greensboro, N.C., for plaintiffs.

Ed Bowden, James E. Kelly, Jr., Clifford P. Britt, Winston–Salem, N.C., for defendants.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

This matter is before the court upon both plaintiffs' and defendants' motions for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiffs moved for partial summary judgment on the issue of vicarious liability against Dallas Carrier Corporation (DCC) for the conduct of defendant Raymond Smith (Smith). The defendants' Rule 56 motion addressed the question of whether or not the plaintiffs are entitled to punitive damages. The parties have fully briefed the issues, and the matter is now ripe for a ruling. The court holds that plaintiffs' partial summary judgment motion on the vicarious liability issue is granted and that the defendants' partial summary judgment motion as to the punitive damages question is denied.

### *Factual Background*

Plaintiffs Deborah Lyn Phillips (Lyn Phillips) and Matilda Phillips (mother of Lyn Phillips) filed a civil action against defendants DCC and Smith, seeking to re-cover damages arising from an automobile accident which occurred on February 17, 1987 in Randolph County, North Carolina.

Lyn Phillips was driving easterly on Highway 64, a two-lane, undivided road, and Smith, operating a tractor-trailer truck owned by DCC, was also traveling in the eastbound lane behind Lyn Phillips. The collision occurred when Lyn Phillips attempted to turn left onto Rural Paved Road 1416. Smith had decided to bypass Lyn Phillips by crossing solid yellow lines and driving in the westbound lane to go around her, but their vehicles crashed when Lyn Phillips initiated her left turn.

The plaintiffs argued that Smith could have stopped his truck until Lyn Phillips had completed her left turn and should have known that he could not pass safely. Smith did not recall seeing the solid yellow line running along the eastbound lane near the 64–Rural Paved Road T-intersection and did not see the caution sign which would have warned him that Lyn Phillips was stopped at an intersection. He stated that he was going about 50 miles per hour (within the 55 miles per hour speed limit).

According to Smith, he noticed the Phillips' vehicle was stopped in front of him as he approached the intersection. Because she did not turn when the westbound lane became clear, Smith thought the car was either stalled or someone was about to get out of the car. He never considered stopping the truck, and sped up as he approached Phillips' car so that he could pass it. The parties disagree as to when and how many times Smith blew his horn. The plaintiffs argued that he only blew it once just before impact, but the defendants argued that he blew it several times before the accident became inevitable. Immediately before impact, a blind spot blocked Smith's line of vision, and he could no longer see Phillips' car. He first realized his truck had hit something when he felt shimmying in one of his front wheels. The force of the impact caused Lyn Phillips' car to slide sideways 180 feet and land in a ravine on U.S. Highway 64's shoulder. After first applying his brakes, Smith was

able to control his truck and came to a stop 573 feet east of the impact point.

The plaintiffs also maintained that DCC was responsible for Smith's actions because he was an employee or agent of DCC and that the accident occurred during the course and scope of his employment or agency. Defendant owned the truck in question, had been licensed by the Interstate Commerce Commission (ICC) as a motor carrier, and operated the truck under its ICC permit. At the time of the accident, the DCC placard and its ICC number were displayed on the tractor's door. Defendant had instructed Smith to obtain a load of materials from Minster, Ohio and deliver them to Asheboro, North Carolina. It was uncontroverted that Smith operated the truck throughout this trip under the authority, direction, supervision, and control of DCC.

In response, defendants denied that Smith was a DCC employee. Rather, they suggested that he was employed and paid by Transportation Leasing Systems (TLS). Transportation Leasing Systems had a contract with DCC to provide it with truck drivers. The defendants maintained that Smith and his services had been leased to DCC by TLS, and that DCC should not be held responsible for the conduct of those who merely used their equipment but did not work for them.

### Legal Discussion
### Summary Judgment Standard

The grant or denial of any summary judgment motion hinges on the existence or non-existence of undisputed relevant facts. "[S]ummary judgment is proper *only* when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Invest. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (emphasis added). *See Birdwhistle v. Kansas Power and Light Company*, 723 F.Supp. 570, 574 (D.Kan.1989) ("Where different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment."). In order to prevail on a Rule 56

motion, the movant must demonstrate that the absence of a genuine issue of material fact exists and that judgment in its favor is warranted as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Parties subject to a summary judgment motion may support their positions with affidavits, depositions, and other documentary evidence. Further, the nonmovant's evidence is taken as truth and all reasonable inferences must be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). However, in rebutting a summary judgment motion, the nonmoving party "may not rest upon the mere allegations or denials in his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 247, 106 S.Ct. at 2509. If factual disputes exist, they must be material and genuine, not just colorable. *Id.* at 249, 106 S.Ct. at 2510–11.

Because the jurisdictional basis of this case is diversity of citizenship, this court must apply the substantive law of the state where it sits. Thus, North Carolina law governs this controversy. *See, e.g., Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Geiger v. Guilford College Community Volunteer Firemen's Ass'n*, 668 F.Supp. 492, 495 (M.D.N.C.1987).

### Vicarious Liability Issue

■ In their partial summary judgment motion, the plaintiffs argued that DCC should be held vicariously liable for the alleged tortious conduct of Smith. They presented three arguments to support their contention: that vicarious liability should attach because Smith was not an independent contractor; that TLS was merely Smith's nominal employer; and that ownership of the vehicle involved in an accident leads to a presumption of agency. Each of these issues will be addressed in turn.

In its defense, the defendants argued that a truck owner should not be found vicariously liable for the negligence of an alleged non-employee who merely used its equipment. The court rejects this position for two reasons. First, it contradicts the

United States Court of Appeals for the Fourth Circuit's ruling that Interstate Commerce Commission regulations "eliminate[ ] the independent contractor concept ... and cast[ ] upon [motor carriers] full responsibility for the negligence" of drivers. *Proctor v. Colonial Refrigerator Transportation, Inc.*, 494 F.2d 89, 92 (4th Cir.1974).

Second, the defendants' argument fails to appreciate the facts in this case. It does not recognize the control, supervision, and authority that DCC exercised over Smith's driving services. Before he was able to drive for DCC, Smith qualified as a DCC driver by passing its written and driving tests. Smith had been instructed to obtain a load of materials from Minster, Ohio and deliver them to Asheboro, North Carolina, and one may reasonably assume that DCC benefitted from Smith's services like other employers enjoy the fruits of their employees' labor. In light of the Fourth Circuit's *Proctor* holding and the facts of this case, the court finds that DCC should be found vicariously liable.

The defendants further argued that even if Smith did more than merely use its equipment, TLS is Smith's employer and that company should be held vicariously liable. Under *Cahill v. HCA Management Co.*, 812 F.2d 170 (4th Cir.1987), Raymond Smith is a DCC agent if the company retained the right of supervision and control for acts occurring within the scope of his services for DCC. In that case, the court ruled that where a medical technician was under the "immediate supervision and control" of the corporation which managed the hospital, the hospital is that worker's *nominal* employer. *Id.* at 170–71 (quoting *Jackson v. Joyner*, 236 N.C. 259, 261, 72 S.E.2d 589, 591 (1952)) (emphasis added). The court found that the hospital management company could be found vicariously liable if the technician was found negligent.

In the instant case, the court finds that TLS is Smith's nominal employer and that DCC can and should be found vicariously liable for Smith's negligence. Like the hospital management company in *Cahill*, DCC had the right to control and supervise Smith's driving, and fully exercised this right during the events in question. Therefore, DCC may be found vicariously liable for the negligent acts of Smith which occurred during the scope of his employment.

Assuming, *arguendo*, Smith was not found to be an agent or employee of DCC under the common law, the company nevertheless remains vicariously liable under North Carolina statutory law.

> Proof of the registration of a motor vehicle in the name of any person, firm, or corporation, shall for the purpose of any such action, be prima facie evidence of ownership and that such vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment.

N.C.Gen.Stat. § 20–71.1 (1989). This rule creates a presumption of agency once ownership has been established. Defendants offered no evidence to rebut this presumption, and the court considers this factual issue settled and finds that Smith is an agent of DCC. Thus, the plaintiffs' partial summary judgment motion on the vicarious liability issue is granted.

*Punitive Damages*

In its partial summary judgment motion, the defendants argued that the plaintiffs did not deserve a punitive damages award because this award would not be supported by these facts and because it may be unconstitutional. In *Nance v. Robertson*, 91 N.C.App. 121, 123–24, 370 S.E.2d 283, 284–85, *review denied*, 323 N.C. 477, 373 S.E.2d 865 (1988), the North Carolina Court of Appeals held that punitive damages may be awarded where the defendant's conduct "amounts to wantonness, wilfulness, or a reckless indifference to consequences." *See, e.g., Hardy v. Toler*, 288 N.C. 303, 306–07, 218 S.E.2d 342, 345 (1975) (punitive damages permitted "where the wrong is done willfully or under circumstances of rudeness, oppression or in a manner which evidences a reckless and wanton disregard of the plaintiffs' rights"). More specifically, "Punitive damages are allowable for injuries caused by the willful or wanton

operation of a motor vehicle. Willfulness imports a deliberate failure to discharge a duty imposed by law for the safety of others." *Marsh v. Trotman*, 96 N.C.App. 578, 579, 386 S.E.2d 447, 448 (1989) (citations omitted).

■ As defendants correctly stated, the purpose of punitive damages is punishment of a wrongdoer and deterrence of similar conduct. *See, e.g., Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E.2d 297 (1976). This court finds that a jury could reasonably determine that the conduct of Smith, a professional driver of 15 years, was wanton or reckless. The defendant's own testimony justifies this result. In his deposition, Smith stated that he weighed different options in reacting to Lyn Phillips' non-moving vehicle, but nevertheless continued driving at a high rate of speed.

Q. Could you have stopped the truck?

A. Yes, sir.

Q. Why didn't you stop the truck?

A. Well, I had an appointment, you know, so there ain't nothing I can do for the car. I didn't, you know, really think about stopping to try to get out to help anybody or nothing like that.

\* \* \* \* \* \*

Q. Well, you know, if it's an intersection that you're not supposed to pass in an intersection, don't you?

A. Yes, sir.

Q. And if you had seen the sign, you wouldn't have passed her?

A. Well, I said with the car being stopped like that, I thought she was stalled and without—you know, I just tried to get around her so I could go on and deliver my load.

Deposition of Raymond Smith, pp. 32, 37. A reasonable jury could determine that Smith's sole interest during this incident was delivering his load and that he consciously disregarded any possible harms he might inflict upon the stalled car or its occupants. A truck driver with 15 years of experience, he admitted that he could have stopped safely but did not, that he did not see the solid yellow line which forbids passing from the eastbound lane, and that he did not notice the intersection sign advising motorists to be cautious. These and other acts bar defendants' partial summary judgment motion on this issue.

In addition to arguing that the instant facts do not support a punitive damages award, the defendants also maintained that punitive damages may violate both the North Carolina and United States Constitutions. They attempted to rest upon the recent legal controversy concerning the constitutional tension between punitive damages and procedural due process under the Fourteenth Amendment to the United States Constitution. Relying in part on *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), they pointed to the potential for abuse in the awarding of punitive damages and stressed awareness that "juries [can] assess[ ] punitive damages in wholly unpredictable amounts bearing no necessary relation to the actual harm caused." *Id.* at 350, 94 S.Ct. at 3012.

In its current term, the United States Supreme Court addressed the constitutionality of punitive damages generally. The defendants' constitutional argument fails in light of this recent decision. In *Pacific Mutual Life Insurance Co. v. Haslip*, —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the Court upheld a punitive damages award which was four times the amount of compensatory damages. It based its decision upon two grounds: common law tradition and availability of procedural safeguards.

Justice Blackmun, writing for the *Haslip* majority, noted that a punitive damages award should not be stricken merely because a jury exercising broad discretion granted it. The Court stated that "we cannot say that the common-law method for assessing punitive damages is so inherently unfair as to deny due process and be *per se* unconstitutional. 'If a thing has been practised for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it.'" *Id.* 111 S.Ct. at 1043 (quoting *Sun Oil v. Wortman*, 486 U.S. 717, 730, 108 S.Ct. 2117, 2126, 100 L.Ed.2d 743 (1988)).

"[M]en are often punished for aggravated misconduct or lawless acts, by means of a civil action, and the damages, inflicted by way of penalty or punishment, given to the party injured." *Haslip*, 111 S.Ct. at 1042 (quoting *Day v. Woodworth*, 13 How. 363, 371, 14 L.Ed. 181 (1852)). Thus, despite the alleged imperfect nature of the common law scheme of determining punitive damages, its roots in the Anglo–American legal tradition gives it continued viability.

■ Moreover, a system of awarding punitive damages is constitutionally permissible if that scheme contains procedures which guard against overly broad discretion or undue prejudice. The *Haslip* Court noted three factors which should be considered when analyzing the constitutionality of jury punitive damages awards: (1) propriety of the jury's instructions, (2) availability of trial court review of the jury's award, (3) availability of appellate review. Justice Blackmun acknowledged the difficulty involved in creating a more systematic means of awarding punitive damages.

> We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case.... [G]eneral concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus.

111 S.Ct. at 1043. The Court concluded: "As long as the discretion is exercised with reasonable constraints, due process is satisfied." *Id.* 111 S.Ct. at 1044.

■ In light of the *Haslip* opinion, the court rejects the defendants' constitutional argument. They have not presented, beyond the parameters of legal policy, any allegations which would support their contention. In *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), the court rejected the petitioners' due process attack on punitive damages because they offered "no claim that the proceedings themselves were unfair, or that the jury was biased or blinded by emotion or prejudice. Instead, they seek further due process protections, addressed directly to the size of the damages award." *Id.* 109 S.Ct. at 2921. The defendants have not attacked the punitive damages scheme which would be employed by this court, nor have they presented evidence which would show that they would be denied the procedural safeguards it offers. Although DCC implied that its status as a vicarious tortfeasor should eliminate its punitive damages liability, the *Haslip* Court specifically held that "imposing liability upon Pacific Mutual for Ruffin's fraud under the doctrine of *respondeat superior* does not ... violate Pacific Mutual's due process rights." 111 S.Ct. at 1040. Likewise, the imposition of punitive damages would not infringe upon DCC's Fourteenth Amendment rights. Therefore, the court rules that the defendants' partial summary judgment motion as to the punitive damages issue is denied.

### Conclusion

In light of the foregoing, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs' partial summary judgment on the vicarious liability question is GRANTED and that the defendants' partial summary judgment as to the punitive damages issue is DENIED.