GEORGE C. YANCEY, Administrator for the Estate of LUCY W. YANCEY v. ARTIE SYLVESTER LEA and HUSS, INCORPORATED

No. 366A00

(Filed 17 August 2001)

**Motor Vehicles— gross negligence—passing and turning accident**

The trial court did not err in an automobile negligence action by granting defendants' motion for a directed verdict on a gross negligence claim and in refusing to instruct the jury on gross negligence where the sole evidence of negligence was that defendant

Lea began to pass at or about the same time decedent had signaled her intent to turn left. The evidence at most discloses a breach of Lea's duty to exercise ordinary care, but falls substantially short of manifesting any wicked purpose or willful and wanton conduct in conscious and intentional disregard of the rights and safety of others. There was certainly no evidence of racing, excessive speed, intoxication, or any combination thereof, the circumstances present in gross negligence motor vehicle cases to date.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 139 N.C. App. 76, 532 S.E.2d 560 (2000), finding no error in a judgment entered 7 December 1998 by Smith (W. Osmond, III), J., in Superior Court, Granville County. Heard in the Supreme Court 13 March 2001.

*Glenn, Mills & Fisher, P.A., by William S. Mills, for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Steven M. Sartorio, for defendant-appellees.*

LAKE, Chief Justice.

This is a wrongful death action, arising from a motor vehicle accident, wherein plaintiff, George C. Yancey, administrator of the estate of Lucy W. Yancey, driver of one of the vehicles, filed suit for damages for her death against the driver and owner of the other vehicle, defendants Artie Sylvester Lea and Huss, Incorporated, respectively. This case presents the issue of whether the trial court erred in granting defendants' motion for directed verdict as to plaintiff's claim of gross negligence and refusing to instruct the jury on the issue of defendants' gross negligence. We conclude that the trial court did not err and affirm the decision of the Court of Appeals.

On 5 September 1996, the day before the subject accident, Hurricane Fran swept through North Carolina, and during the evening of 6 September, the weather was poor and the skies were still overcast. Defendant Lea was operating a tractor-trailer truck for his employer, defendant Huss, and was transporting a load, weighing approximately eighty thousand pounds, northbound on Interstate Highway 85 to his employer's terminal in Chase City, Virginia. Because of hurricane-related delays on I-85 north of Durham, defendant Lea decided to return to his depot via Highway 15 North, a two-

YANCEY v. LEA

[354 N.C. 48 (2001)]

lane highway. As Lea traveled through Granville County after dark, there was no street lighting or electricity to houses along the highway, and as a result, Lea could not see residential houses or driveways on either side of the highway.

As defendant Lea proceeded north on Highway 15 and approached the town of Bullock in Granville County, he observed and passed, without incident in a passing zone, a pickup truck pulling a trailer. The driver of the pickup truck testified that as he was passed by the tractor-trailer, defendant Lea may have been driving anywhere between fifty-five and sixty-five miles per hour in a fifty-five-mile-per-hour zone.

Defendant Lea testified that he was in the town limits of Bullock when he first saw the taillights of decedent's automobile as it passed over a knoll on the north side of town. When defendant Lea cleared this knoll, decedent's vehicle came back in sight, and he observed that it was traveling straight on Highway 15 but appeared to be slowing down. At this point, the vehicles entered into a passing zone for northbound traffic, and as the distance between the two closed, defendant Lea decided he should pass decedent's automobile. He testified that he could have stopped his truck behind this vehicle but consciously chose to pass instead. The speed limit was forty-five miles per hour in the location of the collision, and the roadway was straight and with unobstructed visibility.

In proceeding to pass decedent's vehicle, defendant Lea testified that he confirmed the passing zone, turned on his left-turn signal and blinked his headlights to warn the driver of the automobile of his intention to pass in the left-hand lane. Defendant Lea further testified that he did not see any turn signal or brake lights from the automobile at any time before he started to pass, and that when he was even with the automobile, he observed the automobile begin to turn and its left front fender cross in front of the truck's right fender. Defendant testified that he was in sixth gear at the time of the collision, so he could not have been driving faster than forty miles per hour. Upon colliding, the tractor-trailer and the automobile moved forward 170 feet before coming to a stop on the highway.

A passenger in decedent's car at the time of the accident, Bobbie Lee Elliott, testified at trial that decedent's car was slowing down in order to turn left off Highway 15 into a residential driveway. Elliott further testified that decedent's left-turn signal was flashing when defendant Lea's tractor-trailer approached, and that the turn signal

was on at the time of the collision. The investigating officer testified that when he spoke to defendant Lea after the accident, Lea showed no signs of a physical or a mental impairment or fatigue, and additionally, the officer testified that the blinkers on decedent's car were not on or operating when he arrived at the scene of the accident or when he had an opportunity to examine the automobile. An expert in the field of accident reconstruction, Dr. Roland F. Barrett, testified as to the physical facts discovered at the scene of the accident. Dr. Barrett confirmed that the truck was entirely in the left-hand passing lane at the time of impact, that it was straight in the passing lane and that the right front area of the truck first made contact with the left side of decedent's vehicle as that vehicle tried to turn.

At the close of all the evidence, plaintiff moved to amend his complaint and to have gross negligence included as a basis for his claim against defendants Lea and Huss. Concurrent with his motion to amend, plaintiff also requested that the jury be given an instruction on the issue of gross negligence with respect to defendant Lea's conduct. Specifically, plaintiff requested that the trial judge give the pattern instruction for reckless driving, N.C.P.I.—Civ. 207.10 (motor veh. vol. 1989), entailing willful or wanton conduct on the part of defendant Lea. The trial court granted plaintiff's motion to amend but denied plaintiff's request for a gross negligence instruction on the grounds that the evidence did not support submission of that issue to the jury.

The jury found both negligence by defendant Lea and contributory negligence on the part of the decedent, and on 7 December 1998, the trial court entered the jury's verdict and dismissed the action against defendants with prejudice. Plaintiff appealed to the Court of Appeals, where a divided court affirmed the decision of the trial court.

The question raised in this case is whether there was evidence of gross negligence on the part of defendant Lea sufficient to override decedent's contributory negligence and allow recovery by plaintiff. Contributory negligence is not a bar to a plaintiff's recovery when the defendant's gross negligence, or willful or wanton conduct, is a proximate cause of the plaintiff's injuries. *Brewer v. Harris*, 279 N.C. 288, 297, 182 S.E.2d 345, 350 (1971). In the sole issue before us, plaintiff contends that defendant Lea's conduct, as reflected in the evidence of record, constituted gross negligence sufficient to overcome the affirmative defense of contributory negligence, and

thus the trial court was required to instruct the jury on gross negligence. We disagree.

This Court has long held that "[w]hen charging the jury in a civil case it is the duty of the trial court to explain the law and to apply it to the evidence on the substantial issues of the action." *Cockrell v. Cromartie Transp. Co.*, 295 N.C. 444, 449, 245 S.E.2d 497, 500 (1978); *see also Superior Foods, Inc. v. Harris-Teeter Super Mkts., Inc.*, 288 N.C. 213, 217 S.E.2d 566 (1975); *Investment Properties of Asheville, Inc. v. Norburn*, 281 N.C. 191, 188 S.E.2d 342 (1972). As this Court stated in *Cockrell*:

> If a party contends that certain acts or omissions constitute a claim for relief or a defense against another, the trial court must submit the issue with appropriate instructions if there is evidence which, when viewed in the light most favorable to the proponent, will support a reasonable inference of each essential element of the claim or defense asserted. *See, Vernon v. Crist*, 291 N.C. 646, 231 S.E.2d 591 (1977); *Atkins v. Moye*, 277 N.C. 179, 176 S.E.2d 789 (1970).

*Cockrell*, 295 N.C. at 449, 245 S.E.2d at 500. In this regard, see also *Adams v. Mills*, 312 N.C. 181, 186-87, 322 S.E.2d 164, 168 (1984).

In determining or defining gross negligence, this Court has often used the terms "willful and wanton conduct" and "gross negligence" interchangeably to describe conduct that falls somewhere between ordinary negligence and intentional conduct. We have defined "gross negligence" as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988); *see also Hinson v. Dawson*, 244 N.C. 23, 92 S.E.2d 393 (1956); *Wagoner v. North Carolina R.R. Co.*, 238 N.C. 162, 77 S.E.2d 701 (1953). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Foster v. Hyman*, 197 N.C. 189, 191, 148 S.E. 36, 37-38 (1929), *quoted in Parish v. Hill*, 350 N.C. 231, 239, 513 S.E.2d 547, 551 (1999). Our Court has defined willful negligence in the following language:

> An act is done wilfully when it is done purposely and deliberately in violation of law or when it is done knowingly and of set purpose, or when the mere will has free play, without yielding to reason. "The true conception of wilful negligence involves a deliberate purpose not to discharge some duty necessary to the

safety of the person or property of another, which duty the person owing it has assumed by contract, or which is imposed on the person by operation of law." *Thompson on Negligence* (2d Ed.) § 20.

*Foster v. Hyman*, 197 N.C. at 191, 148 S.E. at 37 (citations omitted); *see also Brewer v. Harris*, 279 N.C. at 296-97, 182 S.E.2d at 350.

It is clear from the foregoing language of this Court that the difference between ordinary negligence and gross negligence is substantial. As this Court has stated:

An analysis of our decisions impels the conclusion that this Court, in references to *gross negligence*, has used that term in the sense of wanton conduct. Negligence, a failure to use due care, *be it slight or extreme*, connotes inadvertence. Wantonness, on the other hand, connotes *intentional wrongdoing*. Where malicious or wilful injury is not involved, wanton conduct must be alleged and shown to warrant the recovery of punitive damages. Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others.

*Hinson*, 244 N.C. at 28, 92 S.E.2d at 397 (emphasis added).

Thus, the difference between the two is not in degree or magnitude of inadvertence or carelessness, but rather is intentional wrongdoing or deliberate misconduct affecting the safety of others. An act or conduct rises to the level of gross negligence when the *act* is done purposely and with knowledge that such act is a breach of duty to others, i.e., a *conscious* disregard of the safety of others. An act or conduct moves beyond the realm of negligence when the *injury or damage* itself is intentional. *Brewer*, 279 N.C. at 297, 182 S.E.2d at 350.

In the area of motor vehicle negligence, it appears there are no cases wherein the appellate courts of this state have held that a gross negligence instruction should have been given in the context of a simple passing and turning scenario, such as in the instant case. Our case law as developed to this point reflects that the gross negligence issue has been confined to circumstances where at least one of three rather dynamic factors is present: (1) defendant is intoxicated, *Foster v. Hyman*, 197 N.C. 189, 148 S.E. 36; (2) defendant is driving at excessive speeds, *Baker v. Mauldin*, 82 N.C. App. 404, 346 S.E.2d 240 (1986) (defendant driving over one hundred miles per hour); or (3)

defendant is engaged in a racing competition, *Harrington v. Collins*, 298 N.C. 535, 259 S.E.2d 275 (1979); *Lewis v. Brunston*, 78 N.C. App. 678, 338 S.E.2d 595 (1986). In some of these cases, a combination of the above factors are present. *See Brewer v. Harris*, 279 N.C. 288, 182 S.E.2d 345 (defendant's decedent driving over one hundred miles per hour while intoxicated); *Boyd v. L.G. DeWitt Trucking Co.*, 103 N.C. App. 396, 405 S.E.2d 914 (defendant intoxicated and traveling in excess of the posted speed limit), *disc. rev. denied*, 330 N.C. 193, 412 S.E.2d 53 (1991); *Siders v. Gibbs*, 39 N.C. App. 183, 249 S.E.2d 858 (1978) (defendant driving between sixty and eighty miles per hour in a thirty-five-mile-per-hour zone while intoxicated); *Johnson v. Yates*, 31 N.C. App. 358, 229 S.E.2d 309 (1976) (defendant driving seventy to eighty miles per hour in a fifty-five-mile-per-hour zone while intoxicated). In *Brewer*, this Court held that the jury should have been instructed on defendant's willful and wanton conduct where the evidence showed that, at the time of the accident, defendant had a blood alcohol content of .31, that he was driving over one hundred miles per hour before entering a curve and that he ignored warnings from a passenger in his own car to slow down. While we do not hold these factors to comprise an exhaustive list from which gross negligence must always be found, they do serve well to guide our present analysis.

In the case *sub judice*, none of these three factors existed. There was no racing competition, there was no allegation or evidence of intoxication, and plaintiff does not contend excessive speed or speeding on the part of defendant Lea at the time of the accident. The only adverse evidence relating to defendant Lea's speed came from a witness who estimated that at some time and distance prior to the point of collision, he was passed by defendant Lea at a speed somewhere between fifty-five and sixty-five miles per hour in a fifty-five-mile-per-hour zone. This Court has held that testimony reflecting a speed between one named speed and another, such as between thirty-five miles per hour and forty-five miles per hour, is only evidence of the lower estimated speed. *Hinson v. Dawson*, 241 N.C. 714, 86 S.E.2d 585 (1955); *Mitchell v. Melts*, 220 N.C. 793, 18 S.E.2d 406 (1942).

In the instant case, plaintiff basically contends that defendant Lea, rather than slowing and stopping his tractor-trailer behind decedent's vehicle, as defendant Lea acknowledged he could have done, instead elected to pass and thereby chose to ignore the substantial risk of severe injury or death to others. Plaintiff asserts that this was

a conscious, mental process on the part of defendant Lea, coupled with the substantial likelihood of severe injury or death because of the size and weight of his truck, and thus defendant's conduct was elevated beyond simple or ordinary negligence to a reckless disregard. Plaintiff asserts that the evidence viewed in the light most favorable to plaintiff would support the following conclusions: that defendant Lea was tired and in a hurry to get home; that he consciously took Highway 15 instead of Interstate 85 on the basis of less traffic, allowing him to get home faster; that defendant Lea either saw and chose to ignore or should have seen decedent's left-turn signal; that he could have stopped his truck and patiently waited for decedent to complete the maneuver for which she was slowing; and that defendant Lea consciously chose to disregard the risk that decedent's vehicle was turning into a driveway to the left.

In his brief, plaintiff acknowledges that this Court has not applied the issue of gross negligence in the context of a tractor-trailer passing an automobile while the latter was signaling a left turn, and in that regard, plaintiff asserts that the case of *Carr v. Murrows Transfer, Inc.*, 262 N.C. 550, 138 S.E.2d 228 (1964), is distinguishable from the instant case. In *Carr*, the plaintiff's evidence showed that the defendant was following the plaintiff's milk truck, which had on a left-turn signal and which was gradually reducing its speed, and as the milk truck was turning left, it was struck by the defendant's passing tractor-trailer. The defendant in *Carr* stated that prior to his attempt to pass, there was nothing to indicate the plaintiff's intention to make a left turn. In the case *sub judice*, plaintiff asserts that the *Carr* case is distinguishable because "it involved a defendant who was simply inattentive to the turning movements of the preceding vehicle and testified that the milk truck did nothing to indicate its intention to make a left turn." To the contrary, we conclude that the facts in *Carr* are virtually identical to plaintiff's allegations and evidence in the instant case, i.e., that defendant Lea ignored or at best "should have seen" decedent's left-turn signal in operation. This Court in *Carr* did not consider or discuss the question of gross negligence or willful and wanton conduct.

In his brief, plaintiff cites to *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), contending that because defendant Lea was fully aware of decedent's decreasing speed as if coming to a halt, he showed reckless disregard of the risks and consciously created the probable likelihood of serious injury. Additionally, plaintiff relies strongly on the United States District Court case of *Phillips v. Dallas*

*Carrier Corp.*, 766 F. Supp. 416, 420 (M.D.N.C. 1991). In *Phillips*, the defendant was driving his tractor-trailer on a two-lane highway behind the plaintiff's vehicle when the plaintiff slowed to make a left turn onto a rural paved road. The defendant attempted to pass by crossing over the centerline into the opposite lane, colliding with the plaintiff when she turned left into his path. Plaintiff in the case *sub judice* contends the facts here are more compelling than those in *Phillips* because the defendant in *Phillips* blew his horn in warning as he passed, and there was no evidence in *Phillips* that the plaintiff's left-turn signal was on. Plaintiff further asserts that like defendant Lea in the instant case, the defendant in *Phillips* was in a hurry and made a conscious decision to pass the plaintiff even though he could have safely stopped his truck behind her. The trial court in *Phillips* concluded that a reasonable jury could determine that the defendant consciously disregarded any possible harm he might inflict and thus submitted gross negligence.

In analyzing the facts and circumstances of the instant case with those in *Woodson* and *Phillips*, we reject the comparisons. The character, quality and quantity of evidence found in *Woodson* clearly does not exist in the instant case. In *Woodson*, there was a controlled set of circumstances which developed slowly, and unlike the instant case, the defendant in *Woodson* had been previously cited for the same unlawful conduct, clearly evidencing knowing misconduct. Likewise, in *Phillips*, the facts are readily distinguishable from those in the case *sub judice*. The factual circumstances in *Phillips* show that the defendant truck driver elected to pass the plaintiff's vehicle at the intersection of Highway 64 and Rural Paved Road 1416, ignoring and passing over double yellow lines prohibiting passing at that location and ignoring the working caution signal for the intersection, which should have alerted the defendant to the reason the plaintiff in *Phillips* had stopped at the intersection and to the possibility that she would be making a left turn.

In the case *sub judice*, the strongest evidence against defendant Lea, and really the sole basis for plaintiff's case for negligence, was the evidence of decedent's operative left-turn signal and defendant Lea's acknowledgment that he chose to pass, in a passing zone, although he could have stopped behind decedent's automobile and waited to determine what maneuver she was going to make. Although there was evidence to the contrary, plaintiff's evidence reflects an operative left-turn signal, which plaintiff contends defendant Lea either saw and chose to ignore or should have seen.

At best, this case presents a set of circumstances where virtually the sole evidence of negligence is that defendant Lea began to pass at or about the same time decedent had signaled her intent to turn left. When this evidence is considered in the light most favorable to plaintiff, and is tested in such light by this Court's definition of gross negligence and its past application in this state, it falls substantially short of manifesting any wicked purpose, or willful and wanton conduct in conscious and intentional disregard of the rights and safety of others. To conclude otherwise under the facts of this case would substantially blur the distinction this Court has established between gross and ordinary negligence. There was certainly no evidence here of any racing competition, any excessive speed, any intoxication, or any combination thereof. At most, the evidence, in the light most favorable to plaintiff, discloses a breach of defendant Lea's duty to exercise ordinary care.

We therefore hold that the trial court was entirely correct in granting defendants' motion for directed verdict as to plaintiff's claim of gross negligence and in refusing to instruct the jury on the issue of gross negligence. The opinion of the Court of Appeals is affirmed.

AFFIRMED.