IN THE SUPREME COURT OF NORTH CAROLINA

No. 155PA23

Filed 23 August 2024

DEBRA CULLEN

v.

LOGAN DEVELOPERS, INC.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 289 N.C. App. 1 (2023), vacating and remanding an order entered on 14 October 2021 by Judge Henry L. Stevens in Superior Court, Brunswick County. Heard in the Supreme Court on 10 April 2024.

*Ricci Law Firm, P.A., by Meredith S. Hinton, for plaintiff-appellee.*

*McAngus Goudelock & Courie, by Jeffery I. Stoddard and Walt Rapp, for defendant-appellant.*

*Ann C. Ochsner and Gabriel E. Zeller for North Carolina Advocates for Justice, amicus curiae.*

ALLEN, Justice.

The law expects individuals to take reasonable steps to protect themselves from open and obvious risks. For this reason, plaintiffs ordinarily cannot recover damages from defendants who created such risks if the plaintiffs could have avoided harm through due regard for their own safety.

Plaintiff Debra Cullen sued defendant Logan Developers, Inc. for injuries she sustained when she fell through a hole that defendant had cut into the plywood

flooring of plaintiff's attic to provide access to the home's air handler. By her own admission, plaintiff did not look before she stepped backwards into the hole, even though she knew that it was unsafe to walk on any part of the attic that was not covered by flooring. Because the hole presented an open and obvious risk and plaintiff failed to exercise reasonable care under the circumstances, plaintiff cannot prevail on her negligence claim against defendant.

Furthermore, plaintiff's claim against defendant for gross negligence fails as a matter of law. Even if we assume that defendant violated the North Carolina Building Code as plaintiff alleges, defendant did not display the conscious disregard for plaintiff's safety necessary to prove gross negligence. The trial court properly granted defendant's motion for summary judgment on all claims, and we therefore reverse the decision of the Court of Appeals vacating the trial court's order.

## I. Background

In June 2018, plaintiff and her husband (the Cullens) contracted with defendant to build a new home in Southport. During construction, the Cullens rented a nearby residence and frequently visited the construction site to check on the status of their home and speak with the project superintendent.

Construction included installation of the mechanical air handler for the home's heating, ventilation, and air conditioning system. To reach the air handler, which was located in the attic, a person had to walk on plywood flooring that ran between rows of trusses and was surrounded by insulation. Anyone who stepped off the flooring and

onto insulation risked falling through the ceiling.

On 28 December 2018, a mechanical rough-in inspection conducted by a Brunswick County building inspector determined that defendant had installed the air handler too far from the entrance to the attic. As interpreted by the inspector, the North Carolina Building Code required the air handler to be located not more than twenty feet from the attic's entrance.[1]

To comply with the inspector's interpretation of the Building Code, defendant decided to install a second opening to the attic, this one within twenty feet of the air handler. Defendant concluded that the only suitable spot for the second opening was in the master bathroom. Installing the second opening—a so-called "scuttle hole"—entailed cutting a section out of the master bathroom's ceiling and out of the attic's flooring above it. Defendant filled the gap in the attic's flooring with insulation. Thereafter, the house passed reinspection.

The Cullens disapproved of the scuttle hole in the master bathroom. They had expected an entirely smooth ceiling. To resolve the issue, defendant covered the scuttle hole's opening in the master bathroom with drywall, giving it the smooth appearance the Cullens wanted. Defendant did not replace the section that had been cut out of the attic's flooring, however, out of concern that doing so would completely

---

[1] The relevant provision is 2018 North Carolina State Building Code: Mechanical Code § 306.3 (2018), which states in part: "The passageway shall be not . . . more than 20 feet (6096 mm) in length measured along the centerline of the passageway from the opening to the appliance."

close the scuttle hole in violation of the Building Code.

The parties disagree over whether defendant told the Cullens that installing the scuttle hole had involved removing a section of the attic's flooring. Plaintiff insists that defendant did not. The project superintendent testified that he took the Cullens into the attic, pointed out the missing section, and explained why he was unwilling to close the scuttle hole on the attic side.

On 1 May 2019, shortly after the Cullens moved into their home, plaintiff entered the attic to take photographs of the attic's interior. The Cullens had hired a handyman and wanted to add more flooring to the attic to increase its storage space.

While in the attic, plaintiff stepped into the scuttle hole, falling through the master bathroom's ceiling and onto the bathroom floor. The fall left plaintiff with a concussion, a broken heel on her right foot, and a broken thumb. It also aggravated preexisting back injuries.

Plaintiff later testified that she understood when she entered the attic that it was unsafe to step off the flooring and onto insulation. Although plaintiff denied remembering exactly how she fell, both she and Mr. Cullen concluded that she must have stepped backwards into the scuttle hole. Plaintiff admitted that nothing would have prevented her from seeing the insulation covering the scuttle hole if she had looked before she stepped.

On 16 July 2020, plaintiff filed suit against defendant in the Superior Court, Brunswick County, alleging claims of negligence and gross negligence based on the

"dangerous condition of the attic floor." The parties engaged in discovery, after which defendant filed a motion for summary judgment on the grounds that (1) plaintiff's own negligence in stepping backwards into the scuttle hole barred plaintiff's negligence claim and (2) plaintiff had not set forth facts sufficient to establish gross negligence.

On 14 October 2021, the trial court granted defendant's summary judgment motion. The court ruled that plaintiff had "clearly contributed to her accident and the injuries she sustained by failing to keep a proper lookout for her own safety while stepping backwards and off the plywood walking path in the attic and into an area that she knew was unsafe." The trial court further determined that "insufficient facts" existed to support a claim of gross negligence.

The Court of Appeals vacated the trial court's summary judgment order. *Cullen v. Logan Devs., Inc.*, 289 N.C. App. 1, 12 (2023). On the issue of contributory negligence, the appellate court held that "the evidence [viewed] in the light most favorable to [p]laintiff . . . create[s] a genuine issue of material fact as to whether [p]laintiff knew the [scuttle hole] area [in the attic] remained unsafe such that she was negligent in failing to look out for her safety while walking." *Id.* at 7. Similarly, the Court of Appeals held that the trial court should not have granted defendant summary judgment on plaintiff's gross negligence claim because "[t]he forecasted evidence . . . contains allegations and averments which, if taken as true, show [d]efendant knew concealing the appearance of the scuttle hole from the side of the

master bathroom ceiling violated applicable building code, and otherwise knew concealing the hole posed a hazard, but did it anyway." *Id.* at 11.

Defendant subsequently filed a petition for discretionary review with this Court pursuant to N.C.G.S. § 7A-31. We allowed the petition.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2023). "The summary judgment standard requires the trial court to construe evidence in the light most favorable to the nonmoving party[,]" in this case, plaintiff. *Draughon v. Evening Star Holiness Church of Dunn*, 374 N.C. 479, 482 (2020). "We review de novo an appeal of a summary judgment order. When reviewing a matter de novo, this Court considers the matter anew and freely substitutes its own judgment for that of the lower courts." *N.C. Farm Bureau Mut. Ins. Co. v. Herring*, 385 N.C. 419, 422 (2023) (internal quotation marks and citations omitted).

## III. Plaintiff's Contributory Negligence

"Negligence is the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." *Moore v. Moore*, 268 N.C. 110, 112 (1966). Contributory negligence is a defense to negligence claims. The defense arises from the duty that the law imposes on us all

to take reasonable care to protect ourselves. *Draughon*, 374 N.C. at 480.

With certain exceptions, contributory negligence will bar a plaintiff's negligence claim if the defendant shows that the plaintiff could have avoided injury by exercising reasonable care for the plaintiff's own safety.[2] S*orrells v. M.Y.B. Hosp. Ventures of Asheville*, 332 N.C. 645, 648 (1992); *Holderfield v. Rummage Brothers Trucking Co.*, 232 N.C. 623, 625 (1950). Significantly, "the existence of contributory negligence does not depend on [the] plaintiff's *subjective* appreciation of danger; rather, contributory negligence consists of conduct which fails to conform to an *objective* standard of behavior—the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury." *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673 (1980) (internal quotation marks and citation omitted).

Whether the trial court properly granted defendant's motion for summary judgment on plaintiff's negligence claim turns on whether plaintiff was contributorily negligent as a matter of law. *See* Mark W. Morris, *North Carolina Law of Torts* § 19.20[1][c][iv] (3d ed. 2023) ("[I]t is rare that the court will decide the issue of contributory negligence . . . as a matter of law. But when the plaintiff's evidence fails to raise any issue of material fact and the evidence of contributory negligence is uncontradicted, summary judgment for the defendant is appropriate.").

---

[2] The last clear chance doctrine offers one such exception. It allows a contributorily negligent plaintiff to recover when "the conduct of [the] defendant[,] after his negligence and the plaintiff's contributory negligence have had their play, still leav[es] the defendant time and opportunity to avoid the injury notwithstanding what both parties have previously done, or failed to do." *McMillan v. Horne*, 259 N.C. 159, 160 (1963).

"[O]ur case law has made it clear that when the condition that allegedly caused the injury, viewed objectively, is open and obvious, judgment as a matter of law is appropriate." *Draughon*, 374 N.C. at 482–83. "A condition is open and obvious if it would be detected by 'any ordinarily intelligent person using his eyes in an ordinary manner.'" *Id.* at 483 (quoting *Coleman v. Colonial Stores, Inc.*, 259 N.C. 241, 242 (1963) (per curiam)).

We recently dealt with an instance of contributory negligence in the context of an open and obvious condition. In *Draughon*, the plaintiff helped carry a casket up a set of stairs and into a church. *Id.* at 480. "[W]atch[ing] the doorway instead of where he was stepping[,] [the plaintiff] tripped near the top of the steps, fell into the church building, and was injured." *Id.* The top step was covered with a layer of brick that raised it several inches higher than the other steps. *Id.* at 481. The plaintiff sued the church, alleging among other things that it had "failed to keep its premises in a reasonably safe condition and failed to warn [the] plaintiff of a dangerous and defective condition on the property." *Id.* at 482. In concluding that the trial court had properly granted the church's motion for summary judgment, this Court explained: "The distinct height and appearance of the step, the clear visibility of the set of stairs, and plaintiff's previous experience walking down the set of stairs show that a reasonable person in [the] plaintiff's position would have been aware of the step's condition and taken greater care." *Id.* at 485.

Plaintiff tries to distinguish her case from *Draughon* by noting that the

*Draughon* plaintiff "had walked down the steps just before his accident." *Id.* at 486. Because he had just used the stairs, the *Draughon* plaintiff had a chance to appreciate the danger posed by the top step before he walked up the steps while carrying the casket. But here, according to plaintiff, she "had not walked in the attic after [d]efendant cut a hole in the walkway and had no way of knowing that [d]efendant had done so."

The problem with plaintiff's distinction is that the outcome in *Draughon* did not depend on the *Draughon* plaintiff's earlier descent of the church steps. We clearly indicated that the descent was an additional—not essential—basis for our decision:

> *Because the condition of the top step would be open and obvious to a reasonable person,* [the] *defendant had no duty to warn* [the] *plaintiff.* Similarly, because [the] plaintiff, after his previous descent of the steps, did not heed the risk obviously presented by the distinct appearance of the top step, and because he carried the casket while walking sideways without looking at the steps, his own negligence contributed to his fall.

*Id.* at 487 (emphasis added).

The first sentence of the above quotation demonstrates that our holding in *Draughon* rested on the open and obvious condition of the top step. Although this Court pointed to the plaintiff's earlier descent of the steps as further support for our contributory negligence determination, *id.*, we did not hold that a plaintiff must have prior knowledge of an open and obvious risk for the defense of contributory negligence to apply. Indeed, such a holding would have been at odds with our precedents. *See, e.g.*, *Benton v. United Bank Bldg.* Co., 223 N.C. 809 (1944) (applying the "open and

obvious" principle without reference to whether the plaintiff had previously visited the store where she fell).

Plaintiff also tries to distinguish this case from *Draughon* by denying that the scuttle hole presented an open and obvious risk. She observes that the attic had only a single light bulb and one window. Plaintiff further asserts that the scuttle hole "was filled in with a piece of batt insulation in the attic, which was flush with the walkway, making it indiscernible." At a minimum, plaintiff contends, whether the scuttle hole presented an open and obvious risk was a question for the jury, not the trial court.

This argument fails for two reasons. First, plaintiff's assertion that the batt insulation effectively camouflaged the scuttle hole appears to be a fresh allegation. She did not argue the batt insulation issue to the trial court or the Court of Appeals, and we find nothing in the record that supports her contention. "[T]he law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court." *Weil v. Herring*, 207 N.C. 6, 10 (1934).

Second, plaintiff's claim that poor lighting and the batt insulation made the scuttle hole hard to see is contradicted by plaintiff's own testimony. During her deposition, plaintiff admitted under oath that she would have seen the scuttle hole had she looked: "If I had [looked toward the scuttle hole], I would have seen insulation and I would not have stepped in it." Likewise, plaintiff expressly denied that the hole was hidden or that anything blocked it from view. The summary judgment standard requires us to examine the evidence in the light most favorable to plaintiff; it does

not oblige us to ignore the parts of plaintiff's testimony that torpedo her argument.

Despite her admission that the scuttle hole was plainly visible, plaintiff argues that she acted reasonably under the circumstances in stepping backwards in the attic without checking behind her. According to plaintiff, defendant never told her that the scuttle hole's installation had involved the removal of a section from the attic's flooring. She further contends that, even if she had known about the missing section, defendant's promise to repair the master bathroom's ceiling left her with no reason to suppose that the attic's flooring remained dangerous. Plaintiff directs our attention to her testimony that she had visited the attic perhaps twice before defendant installed the scuttle hole. Her familiarity with the attic's original condition, she maintains, left her without any reason to believe that a gap existed in the flooring.

Consistent with *Coleman v. Colonial Store, Inc.*, we reject plaintiff's contention that she acted reasonably by stepping backwards in the attic without looking. The customer in *Coleman* tripped over a metal screen as he turned to his right immediately after exiting the supermarket. 259 N.C. at 242. Shaped like a right triangle, the metal screen was fastened to the wall of the store and was "about four and a half or five feet high, about eight inches wide at the top, and about thirty-four inches wide at the bottom." *Id.* Although the screen was plainly visible through the glass of the exit door, "[t]here was nothing there to call [the customer's] attention to the metal screen." *Id.* The customer had visited the store previously but "in leaving had turned to his left" and "[i]n so doing . . . had not noticed the screen." *Id.* The

customer admitted that he was not looking where he was going at the time of his fall. *Id.*

In affirming the trial court's order dismissing the customer's negligence lawsuit against the supermarket, this Court remarked that "[t]he metal screen at the exit door was obvious to any ordinarily intelligent person using his eyes in an ordinary manner." *Id.* We concluded that the customer's "evidence plainly show[ed] [that] he failed to exercise ordinary care for his own safety." *Id.* at 243.

Like the customer in *Coleman*, plaintiff did not look where she was stepping and was injured by an open and obvious condition. If anything, plaintiff had more reasons than the *Coleman* customer to watch where she was going. Storefronts are not usually perilous environments, but plaintiff knew that she could fall through the ceiling if she stepped off the plywood and onto any area covered by insulation. Moreover, just as the *Coleman* customer's previous familiarity with the store did not excuse him from looking where he was going, plaintiff's prior visits to the attic did not relieve her of the obligation to watch her step.

Plaintiff argues that precedents from the Court of Appeals support her position. We find those cases materially distinguishable. For example, plaintiff points to *Duval v. OM Hospitality, LLC*, 186 N.C. App. 390 (2007). There, a woman and her husband had to make their way down an unlit stairwell to exit a motel. 186 N.C. App. at 391. The stairwell was unlit "because a light timer which controlled the light . . . had been deactivated." *Id.* As the couple descended the stairs, the woman tripped and

fell, injuring herself. *Id.* She later testified that the stairwell "was so dark that [she] could not see the steps." *Id.* The woman sued the motel, but the trial court granted summary judgment in favor of the motel on contributory negligence grounds. *Id.* at 392. The Court of Appeals reversed, opining that

> a jury could also find that [the woman] acted reasonably in using the stairwell since she was not aware of another way out and because she used proper care in descending the dark stairs, carefully and slowly, holding the railing, and having her husband ahead of her feeling for the steps, but fell nonetheless.

*Id.* at 396.

It seems obvious to us that *Duval* is not on point. The woman in *Duval* moved forward cautiously but could not see where she was going through no fault of her own. Here, even if we assume she was moving slowly, plaintiff did not see the scuttle hole because she stepped backwards without looking.

Viewed in the light most favorable to plaintiff, the evidence shows that she failed to exercise reasonable care for her own safety in the attic. By her own admission, plaintiff understood that the attic was dangerous and could have avoided falling by looking before she stepped backwards. The trial court correctly determined that plaintiff was contributorily negligent, and the Court of Appeals erred in vacating the trial court's order granting summary judgment for defendant on plaintiff's negligence claim.

## IV.    Plaintiff's Claim for Gross Negligence

"Contributory negligence is not a bar to a plaintiff's recovery when the

defendant's gross negligence . . . is a proximate cause of the plaintiff's injuries." *Yancey v. Lea*, 354 N.C. 48, 51 (2001). Thus, although it defeats her negligence claim, plaintiff's contributory negligence does not prevent her from pursuing her claim against defendant for gross negligence. Like the trial court and the Court of Appeals, we proceed to the merits of plaintiff's gross negligence claim.

This Court has sometimes found it difficult to distinguish between negligence and gross negligence in practice. *See Hinson v. Dawson*, 244 N.C. 23, 27–28 (1956) ("When an injury is caused by negligence, any attempt to differentiate variations from slight to gross is fraught with maximum difficulty."). Nonetheless, "the difference between ordinary negligence and gross negligence is substantial." *Yancey*, 354 N.C. at 53. Whereas ordinary negligence involves inadvertence or carelessness, we have used the term gross negligence "in the sense of wanton conduct." *Id.* (quoting *Hinson*, 244 N.C. at 28). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Foster v. Hyman*, 197 N.C. 189, 191 (1929).

Plaintiff argues that "defendant willfully violated the building code and consciously disregarded plaintiff's safety." According to plaintiff, defendant created a dangerous condition by leaving the scuttle hole open in the attic and not alerting plaintiff of the peril.

As plaintiff acknowledges, the Court of Appeals has opined that a Building Code violation without more does not qualify as gross negligence. *Bashford v. N.C.*

*Licensing Bd. for Gen. Contractors*, 107 N.C. App. 462, 467 (1992). We agree that such a violation does not automatically constitute gross negligence because it is not necessarily the product of a bad purpose or reckless indifference to the rights of others. Consequently, even if we assume that defendant violated the Building Code by closing the scuttle hole on the master bathroom side, this fact alone does not establish that summary judgment for defendant was improper. The question is whether there is evidence that defendant acted with a bad purpose or with reckless indifference to plaintiff's rights.

Construed in the light most favorable to plaintiff, the evidence yields the following details. Defendant installed the scuttle hole to comply with the county inspector's interpretation of the Building Code. Plaintiff did not know that defendant had cut a section out of the attic's flooring as part of the installation. Defendant subsequently closed the hole on the master bathroom side in response to the Cullens' unhappiness over the ceiling's appearance. Defendant did not clearly communicate its actions to plaintiff, who believed that the scuttle hole was entirely gone. The scuttle hole on the attic side was filled with insulation that plaintiff would have seen had she looked before stepping backwards.

On these facts, a jury could conclude that defendant violated the Building Code by closing the scuttle hole entrance in the master bathroom. Jurors could also find that defendant created a risk to plaintiff by failing to explain that the scuttle hole remained open in the attic.

Yet these facts do not demonstrate that defendant acted for some bad purpose, nor do they reflect a reckless indifference to the rights of others. Rather, they show that defendant made a thoroughly unwise—and unsuccessful—attempt to balance the competing priorities of customer satisfaction and Building Code compliance. Moreover, while plaintiff might have escaped injury if defendant had clearly informed her of the missing section in the attic's flooring, the scuttle hole presented essentially the same risk—the risk of falling through the ceiling—as the other parts of the attic that were covered with insulation instead of plywood. The insulation covering the scuttle hole was plainly visible and served as a warning not to step there. Defendant did not evince reckless indifference in assuming that plaintiff would heed that warning.

Plaintiff cannot show that defendant's conduct went beyond mere carelessness and rose to the level of wantonness. Defendant was therefore entitled to summary judgment as a matter of law on plaintiff's gross negligence claim.

## V.    Conclusion

For the reasons set out above, the trial court properly granted defendant's motion for summary judgment on plaintiff's claims of negligence and gross negligence. Accordingly, we reverse the decision of the Court of Appeals and reinstate the trial court's summary judgment order.

REVERSED.