**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-2078

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Cooperative Bank,

Plaintiff - Appellant,

v.

RICHARD ALLEN RIPPY; JAMES D. HUNDLEY; FRANCES PETER FENSEL, JR.; HORACE THOMPSON KING, III; FREDRICK WILLETTS, III; DICKSON B. BRIDGER; PAUL G. BURTON; OTTIS RICHARD WRIGHT, JR.; OTTO C. BUDDY BURRELL, JR.,

Defendants – Appellees.

------------------------------

NORTH CAROLINA COMMISSIONER OF BANKS,

Amicus Curiae,

THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; AMERICAN ASSOCIATION OF BANK DIRECTORS; INDEPENDENT COMMUNITY BANKERS OF AMERICA; THE CLEARING HOUSE ASSOCIATION, LLC; AMERICAN BANKERS ASSOCIATION; ALABAMA BANKERS ASSOCIATION; ALASKA BANKERS ASSOCIATION; ARIZONA BANKERS ASSOCIATION; ARKANSAS BANKERS ASSOCIATION; CALIFORNIA BANKERS ASSOCIATION; COLORADO BANKERS ASSOCIATION; CONNECTICUT BANKERS ASSOCIATION; DELAWARE BANKERS ASSOCIATION; FLORIDA BANKERS ASSOCIATION; GEORGIA BANKERS ASSOCIATION; HAWAII BANKERS ASSOCIATION; HEARTLAND COMMUNITY BANKERS ASSOCIATION; IDAHO BANKERS ASSOCIATION; ILLINOIS BANKERS ASSOCIATION; ILLINOIS LEAGUE OF FINANCIAL INSTITUTIONS; INDIANA BANKERS ASSOCIATION; IOWA BANKERS ASSOCIATION; KANSAS BANKERS ASSOCIATION; KENTUCKY BANKERS ASSOCIATION; LOUISIANA BANKERS ASSOCIATION; MAINE BANKERS ASSOCIATION; MARYLAND BANKERS ASSOCIATION; MASSACHUSETTS BANKERS ASSOCIATION; MICHIGAN BANKERS ASSOCIATION; MINNESOTA BANKERS ASSOCIATION; MISSISSIPPI BANKERS ASSOCIATION;

MISSOURI BANKERS ASSOCIATION; MONTANA BANKERS ASSOCIATION; NEBRASKA BANKERS ASSOCIATION; NEVADA BANKERS ASSOCIATION; NEW HAMPSHIRE BANKERS ASSOCIATION; NEW JERSEY BANKERS ASSOCIATION; NEW MEXICO BANKERS ASSOCIATION; NEW YORK BANKERS ASSOCIATION; NORTH CAROLINA BANKERS ASSOCIATION; NORTH DAKOTA BANKERS ASSOCIATION; OHIO BANKERS LEAGUE; OKLAHOMA BANKERS ASSOCIATION; OREGON BANKERS ASSOCIATION; PENNSYLVANIA BANKERS ASSOCIATION; PUERTO RICO BANKERS ASSOCIATION; RHODE ISLAND BANKERS ASSOCIATION; SOUTH CAROLINA BANKERS ASSOCIATION; SOUTH DAKOTA BANKERS ASSOCIATION; TENNESSEE BANKERS ASSOCIATION; TEXAS BANKERS ASSOCIATION; VERMONT BANKERS ASSOCIATION; VIRGINIA BANKERS ASSOCIATION; UTAH BANKERS ASSOCIATION; WASHINGTON BANKERS ASSOCIATION; WASHINGTON FINANCIAL LEAGUE; WEST VIRGINIA BANKERS ASSOCIATION; WISCONSIN BANKERS ASSOCIATION; WYOMING BANKERS ASSOCIATION,

Amici Supporting Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Terrence W. Boyle, District Judge. (7:11-cv-00165-BO)

Argued: May 13, 2015                    Decided: August 18, 2015

Before GREGORY and HARRIS, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed in part, reversed in part, vacated in part, and remanded by published opinion. Judge Gregory wrote the opinion, in which Judge Harris and Senior Judge Hamilton joined.

**ARGUED:** James Scott Watson, FEDERAL DEPOSIT INSURANCE CORPORATION, Arlington, Virginia, for Appellant. Thomas E. Gilbertsen, VENABLE LLP, Washington, D.C., for Appellees. **ON BRIEF:** Mary L. Wolff, Douglas A. Black, WOLFF ARDIS, P.C., Memphis, Tennessee; Colleen J. Boles, Assistant General Counsel, Kathryn R. Norcross, Senior Counsel, Steven C. Morrison, Counsel, FEDERAL DEPOSIT INSURANCE CORPORATION, Arlington, Virginia, for Appellant. Ronald R. Glancz, Meredith L. Boylan, VENABLE LLP, Washington,

D.C.; Camden R. Webb, Kacy L. Hunt, WILLIAMS MULLEN P.C., Raleigh, North Carolina, for Appellees. Katherine M.R. Bosken, Raleigh, North Carolina, for Amicus North Carolina Commissioner of Banks. Kate Comerford Todd, Steven P. Lehotsky, U.S. CHAMBER LITIGATION CENTER, INC., Washington, D.C.; John K. Villa, Kannon K. Shanmugam, Ryan Scarborough, Richard Olderman, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Amicus The Chamber of Commerce of the United States of America. Michael A.F. Johnson, Nancy L. Perkins, Elliott C. Mogul, Joanna G. Persio, ARNOLD & PORTER LLP, Washington, D.C., for Amici American Bankers Association, Alabama Bankers Association, Alaska Bankers Association, Arizona Bankers Association, Arkansas Bankers Association, California Bankers Association, Colorado Bankers Association, Connecticut Bankers Association, Delaware Bankers Association, Florida Bankers Association, Georgia Bankers Association, Hawaii Bankers Association, Heartland Community Bankers Association, Idaho Bankers Association, Illinois Bankers Association, Illinois League of Financial Institutions, Indiana Bankers Association, Iowa Bankers Association, Kansas Bankers Association, Kentucky Bankers Association, Louisiana Bankers Association, Maine Bankers Association, Maryland Bankers Association, Massachusetts Bankers Association, Michigan Bankers Association, Minnesota Bankers Association, Mississippi Bankers Association, Missouri Bankers Association, Montana Bankers Association, Nebraska Bankers Association, Nevada Bankers Association, New Hampshire Bankers Association, New Jersey Bankers Association, New Mexico Bankers Association, New York Bankers Association, North Carolina Bankers Association, North Dakota Bankers Association, Ohio Bankers League, Oklahoma Bankers Association, Oregon Bankers Association, Pennsylvania Bankers Association, Puerto Rico Bankers Association, Rhode Island Bankers Association, South Carolina Bankers Association, South Dakota Bankers Association, Tennessee Bankers Association, Texas Bankers Association, Utah Bankers Association, Vermont Bankers Association, Virginia Bankers Association, Washington Bankers Association, Washington Financial League, West Virginia Bankers Association, Wisconsin Bankers Association, and Wyoming Bankers Association. Matthew P. Previn, Joseph J. Reilly, Ali M. Abugheida, BUCKLEY SANDLER LLP, Washington, D.C., for Amici American Association of Bank Directors, Independent Community Bankers of America, and The Clearing House Association, LLC.

_____

3

GREGORY, Circuit Judge:

The Federal Deposit Insurance Corporation, as Receiver for Cooperative Bank ("FDIC-R"), brought this civil action against the several officers and directors of a failed North Carolina bank, Cooperative Bank ("Cooperative" or the "Bank"), alleging that the officers and directors were negligent, grossly negligent, and breached their fiduciary duties, resulting in the failure of the Bank. In this summary judgment appeal, the FDIC-R argues that the district court erred in finding that North Carolina's business judgment rule shields the officers and directors from allegations of negligence and breach of fiduciary duty, and that there was insufficient evidence to support claims of gross negligence. For the reasons that follow, we vacate the district court's award of summary judgment to the Bank's officers on the FDIC-R's claims of ordinary negligence and breach of fiduciary duty and remand those claims for further proceedings. We also reverse and remand the district court's order denying as moot the FDIC-R's cross-motion for summary judgment, as well as its order denying as moot the FDIC-R's motion to exclude the declaration of Robert T. Gammill and the attached exhibits. We affirm the district court's judgment with respect to the remaining claims.

**I.**

Cooperative first opened in Wilmington, North Carolina in 1898 as a community bank and operated as a thrift until 1992. As such, it focused on single-family housing loans. In 1992, the Bank converted to a state-chartered savings bank regulated by the FDIC.[1] Cooperative became a state commercial banking institution in 2002, following the board of director's decision to increase the Bank's assets from $443 million to $1 billion by 2005. The Bank's growth strategy focused on commercial real estate lending.

---

[1] The FDIC in its corporate capacity is an insurer and federal regulator, and it performs a separate function from the FDIC in its capacity as receiver of failed banks. We refer to the FDIC in its corporate capacity simply as the "FDIC," and in its receiver capacity as the "FDIC-R" throughout this opinion. As the Second Circuit aptly explained:

> Created by Congress to "promot[e] the stability of and confidence in the nation's banking system," Gunter v. Hutcheson, 674 F.2d 862, 870 (11th Cir.), cert. denied, 459 U.S. 826 (1982), the FDIC is authorized by statute to function in two separate and distinct capacities: "the Corporation shall insure the deposits of all insured banks as provided in this chapter," 12 U.S.C. § 1821(a)(1) (1988); "the Corporation as receiver of a closed national bank . . . shall have the right to appoint an agent or agents to assist it in its duties as such receiver," 12 U.S.C. § 1822(a) (1988). . . . [T]hey are discrete legal entities . . . .

FDIC v. Bernstein, 944 F.2d 101, 106 (2d Cir. 1991) (first alteration in original).

The FDIC and the North Carolina Commission of Banks ("NCCB"), as Cooperative's regulators, performed annual reviews of the Bank.

During July and August of 2006, the FDIC conducted an annual examination of Cooperative as of June 30, 2006. At the conclusion of the examination, the FDIC issued the Bank's 2006 Report of Examination ("2006 FDIC Report"). Cooperative was scored in each of the following categories: Capital, Asset Quality, Management, Earnings, Liquidity, and Sensitivity to Market Risk. The examination categories collectively are commonly referred to by the acronym CAMELS, and are scored on scale from 1-5, with "1" being the best and "5" being the worst. Cooperative received a "2" for each of its CAMELS ratings. The majority of the observations in the 2006 FDIC Report were positive. However, the Report identified deficiencies in credit administration and underwriting, which the FDIC ascribed to oversight weaknesses. Additional problems with audit practices, risk management, and liquidity were also discussed in the Report. Bank management certified that the Report had been reviewed, and the appropriate officials agreed to address the issues.

In September 2007, the NCCB conducted its annual review of Cooperative as of June 30, 2007. At the conclusion of the examination, the NCCB issued its 2007 Report of Examination

("2007 NCCB Report").  Like the 2006 FDIC Report, the 2007 NCCB Report awarded the Bank a rating of "2" for each CAMELS category.  Overall, the NCCB concluded that Cooperative was functioning in a satisfactory manner.  However, the 2007 NCCB Report also observed that Cooperative's management had been slow to correct deficiencies and weaknesses identified in previous examinations.  Such deficiencies included weak credit administration practices, the use of stale financial information in the loan approval process, and problematic audit practices.  Again, Bank management promised to address the issues.

Cooperative additionally underwent an external loan review in 2007, which was conducted by Credit Risk Management, L.L.C. ("CRM").  CRM reviewed a sample of the loans originating during or after April 2006.  At the conclusion of the review, CRM issued a written report ("2007 CRM Report").  The Report indicated that the reviewed loans had received passing grades.  CRM also observed that credit file documentation for the sample loans was generally sufficient, and that the Bank had recently hired additional credit analysts.  However, CRM also suggested that credit file documentation should be updated periodically to more accurately reflect the changing status of various construction projects.

CRM conducted a second external loan review in June 2008, which examined new loans made since its 2007 review.  CRM issued

7

a written report of its findings ("2008 CRM Report").  The 2008 CRM Report criticized Cooperative for deficiencies relating to loan documentation and monitoring, and for use of stale financial information.  The Report reflected the downward trend in grades given to the sample loans.  Unlike the 2007 review, many of the loans reviewed in 2008 received failing grades.

In November 2008, the FDIC and the NCCB conducted a joint annual review of Cooperative as of September 30, 2008.  At the conclusion of the review, the agencies issued the 2008 Report of Examination ("2008 Joint Report").  Cooperative was given a rating of "5," the lowest possible rating, in all but one of the CAMELS categories.  The sole exception was Sensitivity to Market Risk, in which Cooperative was awarded a "4."  The 2008 Joint Report was extremely critical, and faulted the Bank for its high commercial real estate loan concentration.  The Report also noted that Cooperative's management had ignored or inadequately addressed previously raised concerns about credit administration, underwriting practices, and liquidity. Cooperative's overall condition was traced back to the decision to aggressively pursue commercial real estate lending in its effort to grow the Bank's assets.

On March 12, 2009, the FDIC issued a Cease and Desist Order, to which the Bank, the NCCB, and the FDIC all consented. The Order set forth certain actions that the Bank was required

8

to take, including developing a capital restoration plan. Cooperative was ultimately unable to comply with the terms of the Cease and Desist Order, and on June 19, 2009, the NCCB closed the Bank and named the FDIC-R as the receiver. According to a Material Loss Review conducted by the FDIC Office of Inspector General, the FDIC-R suffered losses of $216.1 million due to the Bank's failure.

The FDIC-R filed a complaint against Cooperative in August 2011, alleging that the named officers and directors were negligent, grossly negligent, and breached their fiduciary duties in their approval of 78 residential lot loans and 8 commercial loans between January 2007 and April 2008. The complaint seeks damages from each named officer and director in amounts ranging from $4.4 million to over $33 million. The Appellees responded with a motion to dismiss arguing, among other things, that North Carolina law does not contemplate negligence claims against officers and directors and, in any event, the North Carolina business judgment rule shielded them from claims of negligence and breach of fiduciary duty. FDIC v. Willetts (Willetts I), 882 F. Supp. 2d 859, 862 (E.D.N.C. 2012). They also argued that the FDIC-R had failed to state facts sufficient to support its claims of gross negligence. Id. The district court denied the motion to dismiss.

The Appellees thereafter filed an answer.  Their answer included several affirmative defenses, including that "[t]he FDIC[-R]'s claims are barred in whole or in part by its failure to mitigate damages," and are also barred "in whole or in part by the doctrine of superseding or intervening cause."  J.A. 42-43.

After lengthy discovery, the Appellees filed motions for summary judgment on all of the FDIC-R's claims against them. The FDIC-R filed a cross-motion for partial summary judgment on the Appellees' affirmative defenses of failure to mitigate and superseding or intervening cause.[2]

---

[2] The parties also filed Daubert motions.  The Appellees sought "to exclude Harry Potter as an expert witness because they allege[d] his opinions on [shared loan loss agreements]" were of little value and were "not rebuttal testimony, but instead an untimely attempt to produce a previously undisclosed expert on damages issues."  FDIC v. Willetts (Willetts II), 48 F. Supp. 3d 844, 848 (E.D.N.C. 2014).  The district court excluded Mr. Potter's report because it found both that he had an insufficient basis for forming his opinions, and that the report was submitted after the deadline for expert reports had passed.  Id.  The FDIC-R does not challenge this ruling.

The FDIC-R sought to exclude the declaration of Robert T. Gammill and the attached exhibits, arguing that the declaration "contains new expert opinions and previously undisclosed facts and data supporting them and because it was submitted after the expert witness disclosure deadline."  Id. at 852.  Because the district court granted summary judgment in favor of the Appellees on all claims, the motion was denied as moot.  Id.  As discussed below, we reverse the district court's grant of summary judgment to the Officer Appellees on the FDIC-R's claims of ordinary negligence and breach of fiduciary duty. Accordingly, the FDIC-R's motion to exclude is no longer moot (Continued)

10

The district court granted summary judgment in favor of the Appellees, and denied the FDIC-R's cross-motion for summary judgment as moot. The court held that the FDIC-R "fail[ed] to reveal any evidence that suggests any defendant has engaged in self-dealing or fraud, or that any defendant was engaged in any other unconscionable conduct that might constitute bad faith," and that their actions were thus protected by the business judgment rule from claims of ordinary negligence and breach of fiduciary duty. FDIC v. Willetts (Willetts II), 48 F. Supp. 3d 844, 850 (E.D.N.C. 2014). The court further found that the FDIC-R had failed to adduce evidence "that any of the defendants approved the challenged loans and made policy decisions knowing that these actions would harm Cooperative and breach their duties to the bank" and thus "[could not] show that any of the defendants engaged in wanton conduct or consciously disregarded Cooperative's well-being." Id. at 852.

This appeal followed. The FDIC-R argues that: (1) the district court improperly applied the business judgment rule; (2) it presented evidence sufficient for a reasonable juror to conclude that the directors and officers were grossly negligent; and (3) there are disputed issues of material fact that preclude

with respect to these claims and must be addressed by the district court on remand.

11

granting summary judgment to the Appellees on alternative grounds.  For the reasons that follow, we affirm the district court in part and reverse in part.

## II.

Our review of a grant of summary judgment is de novo. French v. Assurance Co. of Am., 448 F.3d 693, 700 (4th Cir. 2006).  "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Id.  It is axiomatic "that in ruling on a motion for summary judgment, [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (quoting Tolan v. Cotton, --- U.S. ---, 134 S. Ct. 1861, 1863 (2014) (per curiam)) (internal quotation marks omitted).

This matter presents several questions of North Carolina state law.  We have held that,

> in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications.  A state's highest court need not have previously decided a case with identical facts for state law to be clear.  It is enough that a fair reading of a decision by the state's highest court directs one to a particular conclusion.

12

Assicurazioni Generali, S.p.A v. Neil, 160 F.3d 997, 1002 (4th Cir. 1998). If the state's highest court does not provide an answer, then a federal court must seek guidance from an intermediate state court. Id. In so doing, "we defer to a decision of the state's intermediate appellate court to a lesser degree than we do to a decision of the state's highest court. Nevertheless, we do defer." Id. (citing, among others, West v. AT&T, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.")).

## III.

The FDIC-R first attacks the district court's reading of North Carolina's business judgment rule. While we agree with the district court's interpretation, we find that the court improperly applied the rule.

As the Supreme Court explained in Atherton v. FDIC, "state law sets the standard of conduct" which bank officers and directors must follow "as long as the state standard (such as simple negligence) is stricter than that of the federal statute." 519 U.S. 213, 216 (1997). At issue in Atherton was a

federal statute, 12 U.S.C. § 1821(k), which provides that "[a] director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by" the FDIC-R "for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law." 12 U.S.C. § 1821(k). The Supreme Court interpreted § 1821(k) as "set[ting] a 'gross negligence' floor, which applies as a substitute for state standards that are more relaxed." Atherton, 519 U.S. at 216.

North Carolina, in turn, provides the following standard:

(a) A director shall discharge his duties as a director, including his duties as a member of a committee:

(1) In good faith;

(2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

(3) In a manner he reasonably believes to be in the best interests of the corporation.

N.C.G.S. § 55-8-30(a); see also id. § 55-8-42(a) (providing identical standard for corporate officers). Further, "[a] director is not liable for any action taken as a director, or any failure to take any action, if he performed the duties of his office in compliance with this section." N.C.G.S. § 55-8-30(d); see also id. § 55-8-42(d) (officer liability). Thus,

14

under North Carolina law, a director or an officer can be held liable for ordinary negligence.  In line with Atherton and 12 U.S.C. § 1821(k), the FDIC-R may sue bank directors and officers for both ordinary negligence and gross negligence.

North Carolina law also allows corporations to protect directors from liability for ordinary negligence by including exculpatory clauses in their articles of incorporation. N.C.G.S. § 55-2-02(b)(3) provides:

> (b) The articles of incorporation may set forth any provision that under this Chapter is required or permitted to be set forth in the bylaws, and may also set forth:
>
> . . .
>
> (3) A provision limiting or eliminating the personal liability of any director arising out of an action whether by or in the right of the corporation or otherwise for monetary damages for breach of any duty as a director.  No such provision shall be effective with respect to (i) acts or omissions that the director at the time of such breach knew or believed were clearly in conflict with the best interests of the corporation . . . .

In other words, a corporation may limit personal liability for a director's breach of a duty of care, so long as the director did not know or believe his or her actions to have been clearly contrary to the corporation's best interests.  Section 55-2-02(b)(3) does not allow for the limitation of the duty of loyalty or the duty of good faith.  Id.

Officer and director liability for ordinary negligence is constrained by the business judgment rule.  While the Supreme

15

Court of North Carolina has not ruled on the issue, the North Carolina Court of Appeals has recognized that § 55-8-30(d) "has been interpreted as codifying the common law theory of the business judgment rule." Jackson v. Marshall, 537 S.E.2d 232, 236 (N.C. Ct. App. 2000). Judicial application of North Carolina's business judgment rule has been explained by "[a] leading authority on business law" as follows:

> [The business judgment rule] operates primarily as a rule of evidence or judicial review and creates, first, an initial evidentiary presumption that in making a decision the directors acted with due care (i.e., on an informed basis) and in good faith in the honest belief that their action was in the best interest of the corporation, and second, absent rebuttal of the initial presumption, a powerful substantive presumption that a decision by a loyal and informed board will not be overturned by a court unless it cannot be attributed to any rational business purpose.

State ex rel. Long v. ILA Corp., 513 S.E.2d 812, 821-22 (N.C. Ct. App. 1999) (quoting Russell M. Robinson, II, Robinson on North Carolina Corporation Law § 14.06, at 281 (5th ed. 1995)) (alteration in original). "[P]roper analysis" of an officer's or director's actions "requires examination of [those] actions in light of the statutory protections of N.C. Gen. Stat. § 55-8-30(d)(1990)(amended 1993) and the business judgment rule, either or both of which could potentially insulate him from liability." Id. at 821. Indeed, Robinson suggests that "a director may be protected by the business judgment rule even if he fails to meet

16

the prescribed standards of conduct" set forth in North Carolina's statute. Robinson, Robinson on North Carolina Corporation Law § 14.06 n.2.

With this framework in mind, we turn to the FDIC-R's claims.

**A.**

We consider director liability first. Cooperative's articles of incorporation include an exculpatory provision, as permitted by N.C.G.S. § 55-2-02(b)(3):

> A director of the Bank shall not be personally liable to the Bank or its shareholders for monetary damages for breach of any fiduciary duty as a director; provided, however, that this limitation of liability shall not be effective with respect to (i) acts or omissions that the director at the time of such breach knew or believed were clearly in conflict with the best interests of the Bank. . . .

J.A. 683 (emphasis supplied). In accordance with § 55-2-02(b)(3), the exculpatory provision in the Bank's articles of incorporation does not eliminate liability for breaches of the duty of loyalty or the duty of good faith. Nor does the provision eliminate liability for gross negligence.

The FDIC-R does not contend that the Director Appellees breached a duty of loyalty. Thus, unless there is a genuine issue of material fact as to whether the Director Appellees breached their duty of good faith, the exculpatory provision

17

will protect them from liability for ordinary negligence and breach of fiduciary duties.

Under North Carolina law, "the duty of good faith requires [corporate] directors to avoid self-dealing." ILA Corp., 513 S.E.2d at 819. Here, there is no allegation or evidence in the record that the directors engaged in self-dealing or fraud or otherwise acted in bad faith. Rather, the FDIC-R argues only that the evidence suggests that the Director Appellees took actions harmful to the Bank, in part by making decisions without adequate information. This is insufficient. The exculpatory clause protects directors from monetary liability unless the directors "knew or believed [that their acts or omissions] were clearly in conflict" with the Bank's best interests. N.C.G.S. § 55-2-02(b)(3) (emphasis added). Actions that might have been harmful or decisions that could have been better made do not rise to the level of bad faith in this context, especially in light of the fact that the Bank received CAMELS scores of "2" from both of its regulators despite the Director Appellees' actions. We find that the FDIC-R has not presented sufficient evidence of a breach of the duty of good faith to raise a genuine issue of material fact.

We therefore affirm the district court's award of summary judgment to the Director Appellees as to the FDIC-R's claims of ordinary negligence and breach of fiduciary duty.

18

**B.**

We turn next to officer liability. The Bank's exculpatory provision does not cover Bank officers. Thus, we analyze officer liability through the lens of North Carolina's business judgment rule.

As discussed above, courts begin with the "initial evidentiary presumption that in making a decision the directors acted with due care (i.e., on an informed basis) and in good faith in the honest belief that their action was in the best interest of the corporation." ILA Corp., 513 S.E.2d at 822 (quoting Robinson, Robinson on North Carolina Corporation Law § 14.06 at 281). Given the structure of the business judgment rule, the initial presumption can be rebutted with evidence showing that the Officer Appellees: (1) did not avail themselves of all material and reasonably available information (i.e., they did not act on an informed basis); (2) acted in bad faith, with a conflict of interest, or disloyalty; or (3) did not honestly believe that they were acting in the best interest of Cooperative.

The FDIC-R has presented adequate rebuttal evidence. Specifically, its evidence is sufficient to rebut the presumption that the Officers Appellees acted on an informed basis. The FDIC-R presented the expert affidavit and reports of Brian H. Kelley, an independent banking consultant and former

19

"senior bank executive, lender, and attorney at both regional and large commercial banks." J.A. 219-20. His expert report and expert rebuttal report each discuss the general problems with the Appellees' lending and underwriting processes, and also incorporate by reference his loan reports addressing each individual loan.

Kelley stated that, in his opinion, the officers did not act in accordance with generally accepted banking practices. His affidavit states that the Appellees often approved loans over the telephone, without first examining relevant documents. Moreover, they often did not receive the loan documents until after the phone calls, and sometimes not until after the loans had already been funded. Kelley further stated that the review process was inconsistent with practices at other banking institutions, and did not comport with his understanding of officer and director duties. He further noted that the Appellees had failed to address warnings and deficiencies in the Bank's examination reports.

To be sure, the Bank's regulators awarded it "2" ratings on its CAMELS. But, as Kelley observed, the Bank's reports of examination also contained several indications that Cooperative's credit administration and audit processes, among others, needed substantial improvement. He also thought it

clear from his review that certain loans should never have been approved.

Kelley's affidavit and reports thus provide a sufficient basis for rebutting the presumption that the Bank's officers acted on an informed basis. Having found that there is evidence to support the notion that the Officer Appellees did not act on an informed basis, we need not address the other two avenues of rebuttal. See ILA Corp., 513 S.E.2d at 821-22 (explaining the business judgment rule presumption that officers "acted with due care (i.e., on an informed basis) and in good faith in the honest belief that their action was in the best interest of the corporation" (emphasis added)).

We move to the second evidentiary presumption only "absent rebuttal of the initial presumption." Id. (quoting Robinson, Robinson on North Carolina Corporation Law § 14.06 at 281). Because we find that there is sufficient evidence to rebut the initial evidentiary presumption of the North Carolina business judgment rule, we vacate the district court's grant of summary judgment on the FDIC-R's claims of ordinary negligence and breach of fiduciary duty as to the Officer Appellees.

21

**IV.**

The FDIC-R argues that North Carolina law does not require a showing of intentional wrongdoing in order to sustain a claim of gross negligence.  We disagree.

Traditionally, under North Carolina law, the North Carolina Supreme Court "has often used the terms 'willful and wanton conduct' and 'gross negligence' interchangeably to describe conduct that falls somewhere between ordinary negligence and intentional conduct."  Yancey v. Lea, 550 S.E.2d 155, 157 (N.C. 2001).  Further, the court has defined "'gross negligence' as 'wanton conduct done with conscious or reckless disregard for the rights and safety of others.'"  Id. (quoting Bullins v. Schmidt, 369 S.E.2d 601, 603 (N.C. 1988)).  The court has also noted that "'[a]n act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.'"  Id. (quoting Foster v. Hyman, 148 S.E. 36, 37-38 (N.C. 1929)).

In 2005, the North Carolina Supreme Court seemed to change course.  In Jones v. City of Durham (Jones II), the court acknowledged that "gross negligence" had previously been equated with "wanton conduct," but "note[d] that N.C.G.S. § 1D-5(7)," North Carolina's statute concerning the recovery of punitive damages in civil actions, "defines 'willful and wanton conduct' and establishes that such conduct, necessary for the recovery of

22

punitive damages, see N.C.G.S. § 1D-15(a), is more than gross negligence." 622 S.E.2d 596, 600 (N.C. 2005), superseded and withdrawn by Jones v. City of Durham (Jones III), 638 S.E.2d 202 (N.C. 2006). The North Carolina Supreme Court continued that "[i]n light of this distinction, we conclude that while willful and wanton conduct includes gross negligence, gross negligence may be found even where a party's conduct does not rise to the level of deliberate or conscious action implied in the combined terms of 'willful and wanton.'" Id.

The district court here initially relied on Jones II in its opinion denying the Appellees' motion to dismiss. Willetts I, 882 F. Supp. 2d at 865. But in its summary judgment opinion, the court backtracked, noting that "its earlier reliance" on Jones II "was misplaced as the North Carolina Supreme Court withdrew the Jones [II] opinion and no North Carolina court has applied the withdrawn reasoning of Jones [II] while several have defined gross negligence in its traditional terms." Willetts II, 48 F. Supp. 3d at 851 n.2. Aside from the district court's denial of the motion to dismiss in this case, only one other federal court has relied on the withdrawn Jones II opinion, and it did so in an unpublished opinion. See Snow v. Oneill, No. 1:04CV00681, 2006 WL 1837910, at *3 (M.D.N.C. June 5, 2006). The district court here correctly observed that no North Carolina state courts have relied on the withdrawn opinion.

23

The FDIC-R urges this Court to view Jones II as an indication of how the North Carolina Supreme Court will decide future gross negligence cases. But in Jones III, the North Carolina Supreme Court withdrew its Jones II opinion "[f]or the reasons stated in the dissenting opinions [in the court of appeals] as to the gross negligence claim." Jones III, 638 S.E.2d at 203 (citing Jones v. City of Durham (Jones I), 608 S.E.2d 387, 394-95 (N.C. Ct. App. 2005) (Levinson, J., dissenting in part and concurring in part)). Jones I, in turn, relied on the traditional definition of "gross negligence." The North Carolina Supreme Court thus withdrew its reasoning as to the difference between gross negligence and willful and wanton conduct.

Even absent Jones III, we nonetheless find the reasoning in Jones II inapposite. Jones II addressed the definition of gross negligence within the context of North Carolina's punitive damages statute. Another provision of that same statute provides:

> This Chapter applies to every claim for punitive damages, regardless of whether the claim for relief is based on a statutory or a common-law right of action or based in equity. In an action subject to this Chapter, in whole or in part, the provisions of this Chapter prevail over any other law to the contrary.

N.C.G.S. § 1D-10 (emphasis added). Thus, to the extent that the enactment of N.C.G.S. § 1D-5(7) signaled the abrogation of the

24

common law definition of gross negligence, it did so only in the context of cases where a plaintiff seeks punitive damages.

The FDIC-R makes no claim for punitive damages in its complaint. Because there is no claim for punitive damages, the traditional common law definition of gross negligence applies. Accordingly, to survive summary judgment, the FDIC-R must show that there is a genuine issue of material fact as to whether the Appellees' conduct amounted to "'wanton conduct done with conscious or reckless disregard for the rights and safety of others.'" Yancey, 550 S.E.2d at 157 (citation omitted) ("'An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.'" (citation omitted)).

Here, the FDIC-R has failed to present evidence that the Appellees' actions were grossly negligent. To be sure, the Appellees failed to address deficiencies outlined in examination reports issued by the FDIC and the NCCB. But those same reports repeatedly awarded Cooperative ratings of "2" in the CAMELS categories. In the face of this contradiction, we find that there is insufficient evidence that the Appellees acted wantonly or with reckless indifference. We thus affirm the district court's award of summary judgment to all of the Appellees on the issue of gross negligence.

**V.**

The Appellees argue that summary judgment can be entered on alternative grounds. The district court did not address any of these arguments below.

First, the Appellees argue that they "made the challenged loans in reliance on reports, opinions, appraisals, financial data and other information developed and provided by Cooperative's experienced loan officers and credit administrators." Br. of Appellees 54. In advancing their argument, they cite N.C.G.S. § 55-8-30(b), which provides:

> In discharging his duties a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by: (1) One or more officers or employees of the corporation whom the director <u>reasonably believes</u> to be reliable and competent in the matters presented . . . .

N.C.G.S. § 55-8-30(b) (emphasis added); <u>see also</u> N.C.G.S. § 55-8-42 (providing the same protection to officers of a corporation). Here, there is evidence in the record that Cooperative's regulators, as well as its independent auditor, found its commercial loan administration and underwriting process lacking. The FDIC-R's expert, as detailed above, similarly criticized the loan and credit administration process as contrary to standard banking practices. Accordingly, there is a genuine issue of material fact about whether the Officer

26

Appellees' reliance on the reports of their credit administrators and loan officers was reasonable.

Next, the Appellees argue that the FDIC-R "failed to produce evidence that the defendants, rather than the Great Recession, proximately caused the loan defaults pled." Br. of Appellees 59. Proximate cause is "a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed." Mattingly v. North Carolina R.R. Co., 117 S.E.2d 844, 847 (N.C. 1961) (citation and internal quotation marks omitted). Foreseeability is necessary for a finding of proximate cause, but "does not require that [the] defendant should have been able to foresee the injury in the precise form in which it actually occurred." Hairston v. Alexander Tank & Equip. Co., 311 S.E.2d 559, 565 (N.C. 1984). Rather, a plaintiff need only prove that "in 'the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.'" Hart v. Curry, 78 S.E.2d 170, 170 (N.C. 1953) (emphasis added) (citation omitted). Moreover,

> [t]here may be two or more proximate causes of an injury. These may originate from separate and distinct sources or agencies operating independently

27

of each other, yet if they join and concur in producing the result complained of, the author of each cause would be liable for the damages inflicted, and action may be brought against any one or all as joint tort-feasors.

Batts v. Faggart, 133 S.E.2d 504, 506 (N.C. 1963) (citation omitted).

Certainly, it is convenient to blame the Great Recession for the failure of Cooperative, and in turn for the losses sustained by the FDIC-R when it took over the Bank. However, there is evidence in the record, as outlined above, that suggests that "in the exercise of reasonable care," the Bank officers could have "foreseen that some injury would result from [their] act[s] or omission[s], or that consequences of a generally injurious nature might have been expected." Hart, 78 S.E.2d at 170 (emphasis added) (citation omitted). Even before the Recession, exam reports from both of Cooperative's regulators indicated that the Bank was utilizing unsafe practices. And while the Recession undoubtedly contributed to the failure of the Bank, it may have been only one of many contributing factors. This is a genuine issue of material fact, and thus this is a question for a jury. See Adams v. Mills, 322 S.E.2d 164, 172 (N.C. 1984) ("[P]roximate cause of an injury is ordinarily a question for the jury.").

Finally, the Appellees argue that the FDIC-R has not adequately determined its damages. Under North Carolina law, in

28

an action "in tort rather than contract, . . . damages must be the natural and probable result of the tortfeasor's misconduct." Olivetti Corp. v. Ames Bus. Sys., Inc., 356 S.E.2d 578, 585 (N.C. 1987). Additionally, "[i]t is a well-established principle of law that proof of damages must be made with reasonable certainty." Id. There is no requirement for absolute certainty, but rather the evidence of damages "must be sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion." Weyerhaeuser Co. v. Godwin Bldg. Supply Co, Inc., 234 S.E.2d 605, 607 (N.C. 1977) (quoting Service Co. v. Sales Co., 131 S.E.2d 9, 22 (N.C. 1963)).

While the Appellees argue briefly that the FDIC-R's damages calculations were speculative and did not pass muster below, the district court in reality stated only that it was excluding the FDIC-R's damages expert, Harry Potter (a ruling not challenged here) because his report "merely relies on information found in [Office of Inspector General] and FDIC publications," and "[a]n expert is not needed to relay this type of information to the jury." Willetts II, 48 F. Supp. 3d at 848. The district court never concluded that the FDIC was not able to prove its damages with reasonable certainty, and we decline to determine that question in the first instance.

29

**VI.**

For the foregoing reasons, the judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.